UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

Not Present   Not Present

**Proceedings:** (IN CHAMBERS) - UNITED STATES'S MOTION TO DISMISS (Filed March 20, 2017, Dkt. 26)

## I.   INTRODUCTION

On August 5, 2016, DaVinci Aircraft, Inc. ("DaVinci") filed a complaint against the United States of America, as well as Michael Christmas and Rodney Lewis, two members of the United States Air Force. Dkt. 1 ("Compl."). The Complaint alleges five claims against all of the defendants, namely, (1) fraud, (2) negligent misrepresentation, (3) conspiracy, (4) implied contract, and (5) conversion. Id. The gravamen of DaVinci's complaint is that agents of the United States Air Force allegedly conspired to fraudulently compel DaVinci to surrender ten "JASSM antennas."[1]

On November 28, 2016, the United States filed a motion to dismiss DaVinci's complaint pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). Dkt. 12. On January 30, 2017, the Court granted the United States's motion and granted DaVinci 21 days in which to file an amended complaint. Dkt. 18.

On February 21, 2017, DaVinci filed a First Amended Complaint ("FAC"). Dkt. 19. The FAC adds a party, defendant Joel Russell, and alleges Bivens claims against "All Defendants." Unlike the Complaint, the FAC does not allege breach of an implied contract.

---

[1] The Government avers that the antennas in question are "Global Positioning antennas for the AGM-158 Joint Air-to-Surface Standoff Missile." Dkt. 17-1 ("Hemmingsen Decl.") ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

On March 20, 3017, the United States filed a motion to dismiss the FAC. Dkt. 26 (the "Motion" or "Mot."). On March 31, 2017, DaVinci filed an opposition. Dkt. 31. ("Opp'n"). On April 3, 2017, the United States filed a reply, in which the United States also requested that DaVinci's untimely opposition be stricken. Dkt. 32 ("Reply"). On April 4, 2017, DaVinci filed an opposition to the United States's request to strike DaVinci's opposition to the motion to dismiss. Dkt. 33 ("Opp'n to Striking").

On April 17, 2017, the Court held oral argument on the instant motion, after which the Court took the matter under submission. Dkt. 37. Having carefully considered the parties' arguments, the Court rules as follows.

## II.    BACKGROUND

The FAC alleges the following facts.

On or about March 2013, DaVinci avers that ten JASSM antennas were originally manufactured by Ball Aerospace and subsequently offered for sale to the public by Lockheed Martin. FAC ¶ 15. The antennas were allegedly purchased by Avatar Unlimited "as part of a bulk sale of surplus parts," id. at 2:14, and subsequently sold again to BPB Surplus, id. at 2:13. DaVinci alleges that, on July 31, 2013, it purchased the ten antennas from BPB Surplus for $3,000. Id. ¶ 24.

Thereafter, DaVinci offered the ten JASSM antennas for sale for an asking price of $125,000 each. Id. ¶ 29. On September 17, 2013, Laura Voyatzis, a special agent with the U.S. Air Force Office of Special Investigations, accompanied by three other agents, Lenora Madison, John Drapalik, and David Givemero, visited DaVinci's office. Id. ¶ 26. Voyatzis allegedly stated that the agents were there to inspect and discuss the JASSM antennas. Id. After inspecting the antennas, Voyatzis allegedly demanded that DaVinci surrender the ten JASSM antennas. Id. ¶ 27. DaVinci refused to surrender the antennas and the agents asked for the price at which DaVinci would sell the equipment. Id. ¶ 29. After learning that the asking price was $125,000 per antenna, the agents left. Id.

On April 21, 2014 – in response to a price request from Rodney Lewis, a contracting officer on Eglin Air Force Base – DaVinci offered to sell the antennas for $75,000 each. Id. ¶ 30. Lewis allegedly made a counteroffer to pay $7,359 for all ten antennas, based upon the price that DaVinci originally paid. Id. ¶ 32. DaVinci rejected

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

the offer and insisted upon payment of $750,000. Id. ¶33. Lewis allegedly replied, "I encourage you to propose a more reasonable price so we both can benefit." Id.

On June 11, 2014, DaVinci allegedly offered to sell the antennas to Eglin Air Force Base for a total of $600,000. Id. ¶ 36. DaVinci received no response. Id. ¶ 37.

On September 30, 2014, Joel Russell, a special agent with the Air Force Office of Special Investigations, arrived at DaVinci's office with two other Air Force Officers. Id. ¶ 39. The agents insisted that DaVinci surrender the JASSM antennas. Russell stated that the Air Force was authorized and intended to take possession of the antennas. Id. Russell presented DaVinci with a letter, signed by Michael Christmas, Special Agent in Charge at the Office of Special Investigations, "purportedly authorizing the Air Force to take possession of the JASSM" antennas. Id. The letter stated:

> The undersigned, being fully authorized to take possession of the following items being claimed as constituting or consisting of "information relating to the national defense" acknowledges received of ten (10) JASSM antennae - from Leonardo Parra and DaVinci Aircraft. The undersigned further acknowledges that the delivery of the said items by Leonardo Parra and DaVinci Aircraft is made under compulsion of law pursuant to 18 USC 793 (d) and is made without prejudice to any claims by Leonardo Parra and/or DaVinci Aircraft for their fair market value.

Id. ¶ 39; Ex. F ("Christmas Letter"). DaVinci alleges that it surrendered the antennas "pursuant to the demands and threats made by Special Agent Russell to provide the JASSM Antennae under compulsion of law . . . including the threat of criminal prosecution for any failure to comply." Id. ¶ 40.

DaVinci avers that the Air Force lacked authority to take possession of the JASSM antennas and fraudulently represented its authority to induce surrender of the antennas. Id. ¶ 78. DaVinci asserts that defendants knowingly and intentionally made false and fraudulent statements to DaVinci regarding its authority and the risk of criminal prosecution in order to defraud DaVinci. Id. ¶ 73. According to DaVinci, defendants knowingly conspired to make the foregoing misrepresentations to induce surrender of property without due process of law. Id. ¶ 78.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

On March 12, 2015, DaVinci's counsel allegedly sent a letter to the Office of Special Investigations at Eglin Air Force Base, requesting that an attached "Form 95, Administrative Claim for Damages" be filed regarding plaintiffs intended tort claims. Id. ¶ 42. "Ms. Sipp," a litigator in the Claims Division of the Office of the Staff Judge Advocate for the Department of the Army, requested that DaVinci file its request, including the original signed documents, with the Claims Division of the Office of the Staff Judge Advocate "to process the claim." Id. ¶ 43. On August 18, 2015, DaVinci sent the requested documents to the Claims Division as well as the Office of Special Investigations at Eglin Air Force Base. Id. ¶ 44. On August 20, 2015, the Office of the Staff Judge Advocate acknowledged receipt of DaVinci's claim against the United States Government. Id. ¶ 45.

The Government has offered evidence that at least part of the JASSM antennas are classified at the "SECRET and SECRET//SPECIAL ACCESS REQUIRED level" pursuant to a Special Access Program called "SENIOR RODEO." Hemmingsen Decl. Ex. A. The principal change made by plaintiff to the pleadings as they relate to the United States is in relation to the classification of the JASSM Antennas. Plaintiff alleges that the JASSM Antennas were manufactured as "UNCLASSIFIED hardware and not subject to the security requirement which would have applied to the manufacture of classified hardware . . . [including] Special Access Program SENIOR RODEO." FAC ¶ 17. Plaintiff further alleges that neither the Air Force nor any other government official indicated, prior to their seizure, that the JASSM Antennas were, or had ever been, classified. Id. ¶ 18.

### III.   LEGAL STANDARDS

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(l) motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(l). Such a motion may be "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); Thornhill Publishing co. v. General Tel. & Electronics, 594 F.2d 730, 733 (9th Cir. 1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.). If jurisdiction is based on diversity of citizenship, the pleader must show real and complete diversity, and also that his asserted claim exceeds the requisite jurisdictional amount of $75,000. See id. When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. See Dreier v. United States, 106 F.3d 844, 847 (9th Cir. 1996).

**IV.   DISCUSSION**

As an initial matter, plaintiff's opposition was untimely. Plaintiff offers a convoluted argument for why the opposition was, in its view, timely. Pursuant to Local Rule 7-9, the opposition papers should have been filed no later than March 27, 2017. Plaintiff filed its opposition to the instant motion on March 31, 2017. Nonetheless, because neither party has sought a continuance of the hearing on this matter and because a motion to dismiss is better resolved on its merits, the Court will consider the opposition. Accordingly, the United States's request to strike the opposition is **DENIED**.

Turning to the merits of the motion, the allegations against the United States in the FAC have not been significantly altered from those in the original complaint.[2] The Court will address plaintiff's claims in turn.

---

[2] One notable exception is that the FAC no longer alleges breach of an implied contract by the United States. In its original complaint, plaintiff alleged breach of an implied contract. Compl. ¶¶ 67-86. The Court dismissed plaintiff's contract claim. The FAC no longer includes the allegations underlying plaintiff's implied contract claim, nor does it list breach of contract (express or implied) among plaintiff's claims.

Although plaintiff has removed any such claim from its pleadings, plaintiff's opposition to the motion to dismiss includes an entire section dedicated to "Plaintiff's [Claim for] Breach of Contract Implied in Law." Opp'n at 15. Most of the text in plaintiff's opposition regarding plaintiff's purported breach of implied contract claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

A.   **Fraud, Negligent Misrepresentation, and Conspiracy to Commit Fraud or Misrepresentation**

With respect to plaintiff's claims for fraud and misrepresentation, there does not appear to be a reason to reconsider the Court's prior reasoning. "It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996); see also McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction").

The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity in claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(l). However, the FTCA excepts particular claims from this waiver, including "misrepresentation, deceit, [and] interference with contract rights[.]" 28 U.S.C. § 2680(h). The Ninth Circuit has thus concluded that "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by

---

appears to have been copied verbatim from plaintiff's opposition to the prior motion to dismiss. Compare Opp'n at 15 with dkt. 16 at 9.

Insofar as plaintiff did not intend to remove its claim for breach of implied contract from its pleadings, or might argue that such a claim is reasonably inferred from the remaining pleadings, the Court concludes that it lacks subject matter jurisdiction over any such claim. A district court's jurisdiction over contract claims against the United States is limited to claims that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). In this case, DaVinci seeks $1,250,000 in damages from the taking of the JASSM antennas. Accordingly, the Court lacks subject matter jurisdiction over DaVinci's purported breach of contract claim against the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

28 U.S.C. § 2680(h)." Owyhee Grazing Ass'n, Inc. v. Field, 637 F.2d 694, 697 (9th Cir. 1981). "[C]ivil conspiracy is not an independent cause of action." Copelan v. Infinity Ins. Co., 192 F. Supp. 3d 1063 (C.D. Cal. 2016). Accordingly, the FTCA equally bars claims for conspiracy to commit fraud and negligent representation against the United States or federal employees acting in their official capacities. See, e.g. Poole v. McHugh, No. 12-cv-8047-PCT-JAT, 2012 WL 3257654, at *1 (D. Ariz. Aug. 8, 2012) (concluding that "Plaintiffs claims for fraud and conspiracy are barred because the United States has not waived its sovereign immunity").

The Court therefore concludes that it may not exercise jurisdiction over DaVinci's claims for fraud, misrepresentation, and conspiracy involving misrepresentation. The Court thus **GRANTS** the Government's motion to dismiss DaVinci's claims for fraud, misrepresentation, and conspiracy involving misrepresentation and **DISMISSES** those claims for lack of jurisdiction.

**B.     Claim for Conspiracy Related to Abuse of Process**

DaVinci alleges that "Defendants, and each of them, conspired to fraudulently and wrongfully induce and coerce Plaintiff to surrender the 10 JASSM Antennae to the Air Force . . . without due process and without just and proper compensation." FAC ¶ 78. "The two fundamental elements of the tort of abuse of process [are]: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 728 P.2d 1202, 1209 (Cal. 1986) (quotation marks omitted). "The tort requires some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . . There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." Microsoft Corp. v. ATech Corp., 855 F. Supp. 308, 311 (C.D. Cal. 1994) (quotation marks omitted).

The FTCA permits a claim for abuse of process if an investigative or law enforcement agent committed the abuse. See 28 U.S.C. § 2680(h). However, the FTCA is a limited waiver of sovereign immunity, subject to several exceptions. One such exception is enshrined in 28 U.S.C. § 2680(c), also known as the "detention exception." Section 2680(c) bars any claim arising from "the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

However, the "detention exception" is subject to its own exceptions, where the FTCA's waiver of immunity still applies, including where "the property was seized for the purpose of forfeiture" pursuant to federal law. Courts construe the Section 2680(c) 'detention exception' to the FTCA broadly and the forfeiture exception to Section 2680(c) narrowly. See Kosak v. United States, 465 U.S. 848, 856 (1984) (Section 2680(c) prohibits claims against the United States "arising out of" the detention of goods – including the complete loss of the goods); Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008) (Section 2680(c) maintains sovereign immunity for the "entire universe of claims" against law enforcement "arising out of" the detention of property); Foster v. United States, 522 F.3d 1071, 1074 (9th Cir. 2008) (Section 2680(c) prohibits claims arising out of detention unless "*solely* for purposes of forfeiture" (emphasis added)).

In light of the foregoing, the first jurisdictional question presented here is whether DaVinci's claims arise out of a detention of goods by the Government. Detention has a broad meaning and is construed broadly in this context.[3] Thus the "detention exception" to the FTCA encompasses the "entire universe" of claims arising out of the Government's seizure, receipt, and possession of property. Foster, 522 F.3d at 1074; see also Gasho v. United States, 39 F.3d 1420, 1433 (9th Cir. 1994) (claims predicated upon seizure of unregistered airplanes fell within the "detention exception"); Shayesteh v. Raty, No. 2:05-CV-85-TC, 2009 WL 3837225, at *8 (D. Utah Nov. 16, 2009), aff'd, 404 F. App'x 298 (10th Cir. 2010) ("Plaintiff's argument that his property was 'seized' rather than 'detained' is unavailing"). Insofar as plaintiff's abuse of process claim arises out of the Government's taking possession and custody of plaintiff's JASSM Antennas, plaintiff's claim falls within the universe of claims arising out a detention. Therefore plaintiff's abuse of process claim falls within the detention exception to the FTCA.

---

[3] Detention means "a holding in custody" and is typically defined in relation to the verb "detain." See Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/detention (defining *detention* as "the act or fact of detaining or holding back; *especially*: a holding in custody") (last visited April 20, 2017). The verb-form, detain, is similarly defined as holding or keeping something, often in official custody. See Id. at www.merriam-webster.com/dictionary/detain (defining *detain* as "to hold or keep in or as if in custody") (last visited April 20, 2017); Oxford English Dictionary Online www.oed.com/view/Entry/51176 (defining *detain* as "to keep in confinement or under restraint") (last visited April 20, 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

Having concluded that this claim falls within the detention exception to the FTCA, the only remaining jurisdictional question is whether the detention of the JASSM Antennas was "*solely* for purposes of forfeiture," Foster, 522 F.3d at 1074, such that the claims might fall within the narrow exception to the detention exception. "[T]he text provides only the slimmest insight into the scope of CAFRA's re-waiver of sovereign immunity," but has been narrowly construed. Id. at 1077. "[T]he fact that the government may have had the possibility of a forfeiture in mind when it seized plaintiff's property does not detract from the application of the detention of goods exception when" there was at least one other reason for the seizure. Id. at 1075. The re-waiver of sovereign immunity for property seized solely for purpose of forfeiture is intended to permit suits based upon the improper use of forfeiture proceedings. See Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008) ("This 're-waiver' of sovereign immunity for a narrow category of forfeiture-related damages claims was a safeguard created by CAFRA in response to the overly enthusiastic pursuit of civil and criminal forfeiture"); Smoke Shop, LLC v. United States, No. 12-C-1186, 2013 WL 5919175, at *2 (E.D. Wis. Nov. 4, 2013), aff'd, 761 F.3d 779 (7th Cir. 2014) ("The government never commenced forfeiture proceedings, so it seems implausible to suggest that The Smoke Shop's property was seized for purposes of forfeiture").

Here, the JASSM Antennas were not seized solely for purpose of forfeiture. They were seized because they contained classified information posing a danger to national defense. Plaintiff has incorporated the Christmas Letter into the FAC, in which Agent Christmas and Captain Lewis purportedly authorized the seizure of the JASSM Antennas pursuant to 18 U.S.C. § 793(d). Section 793(d) of the Espionage Act provides:

> Whoever, lawfully having possession of, access to, control over, or being entrusted with any . . . instrument [or] appliance . . . *relating to the national defense* . . . willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it . . . [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 793(d) (emphasis added). Thus, the Espionage Act permits the Government to demand and seize property relating to the national defense. Dubin v. United States, 289 F.2d 651, 654 (Ct. Cl. 1961) ("Dubin I"). As relevant here, where property relates to the national defense, the fact that a party may have legally obtained the property does not mean that they have a "right to keep possession of the property." Dubin I, 289 F.2d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

654. If it relates to the national defense, "his keeping it, after its surrender had been demanded, would [be] a serious crime." Id. "The fact that the equipment repossessed was classified by the proper authority, coupled with the very nature of the equipment itself, leaves no room for doubt that it was related to the national defense." Dubin v. United States, 363 F.2d 938, 942 (Ct. Cl. 1966) ("Dubin II"). The forfeiture re-waiver of sovereign immunity does not permit suits to recover the equivalent of contraband – even where it was only designated as contraband *after* seizure. Smoke Shop, LLC v. United States, 761 F.3d 779, 785 (7th Cir. 2014) ("Congress did not intend for plaintiffs to obtain damages for lost items that were eventually deemed contraband").

"[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). Plaintiff argues that the JASSM antennas were taken solely for purpose of forfeiture and that its claims do not arise out of the "detention" of the JASSM antennas. Plaintiff alleges that "[b]ecause Defendants were aware that 18 U.S.C. § 793(d) did not permit the lawful seizure of the 10 JASSM Antennae, the property was seized for the sole purpose of forfeiture. No other justification for the seizure was offered, and no compensation was provided, indicating that forfeiture was the sole purpose of the seizure." FAC ¶ 52. However, the "assertion that the defendants seized the property for the purpose of forfeiture is the type of legal conclusion not entitled to this presumption of truth." Smoke Shop, LLC v. United States, 761 F.3d 779, 785 (7th Cir. 2014) (quotation marks omitted).

The Government has offered into evidence a declaration by Martin Hemmingsen, the Chief of the Advanced Experimentation Branch of Special Programs for the Air Force. Dkt. 17. Hemmingsen states that he works with the Director of Air Force Special Programs, who is the Original Classification Authority for the Special Access Program SENIOR RODEO. Id. ¶ 2. Hemmingsen states that an attached memorandum, Hemmingsen Decl. Ex. A, describes the classification of the JASSM antennas at issue in this case. Id. ¶ 3. Exhibit A, a memorandum signed by an Assistant Secretary of the Air Force, Stephen Russell, states that the JASSM antennas here are classified at the SECRET level and subject to "Special Access Program" SENIOR RODEO because they contain "embedded features" whose "disclosure could provide adversarial nations with critically protected information." Id. Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

Where the materials were seized or detained because they are classified and related to national defense, Section 2680(c)'s "detention exception" to the FTCA appears to govern the District Court's jurisdiction. However, plaintiff does not allege or argue that the JASSM antennas are *unrelated to national defense*. Instead, plaintiff appears to allege that no one informed him they were classified and that they were improperly handled by the Government if they were classified. Plaintiff alleges that the JASSM antennas at issue were only classified in a "*post-hoc* effort and misuse of the security and classification process to avoid legitimate procurement methods." FAC at 2:24-25. Insofar as plaintiff's abuse of process claim might be construed as a challenge to the classification of the JASSM Antennas, the Court notes that classification does not appear to be a prerequisite under 18 U.S.C. § 793(d), which describes attempts to retain property related to national defense. Furthermore, the Court lacks subject matter jurisdiction over claims against the United States predicated upon a challenge to Russell's exercise of discretion in classifying the JASSM Antennas. See 28 U.S.C. § 2680(a) (FTCA waiver of sovereign immunity does not apply to claims "based upon . . . [the performance or failure to perform] a discretionary function or duty . . . *whether or not the discretion involved be abused*"); Loughlin v. United States, 286 F.Supp.2d 1, 23 (D.D.C. 2003) ("Striking the appropriate balance between such competing concerns of secrecy and safety . . . is the essence of governmental policy decision-making, and protecting government officials in carrying out such difficult choices is the purpose of the discretionary function exception").

Notwithstanding plaintiff's argument to the contrary, the fact that the Air Force did not provide compensation at the time of the seizure does not render this a forfeiture action as contemplated under Section 2680(c). As the Christmas Letter acknowledged, plaintiff retains a right to seek compensation for the antennas and they were seized as relating to national security. Notably, although there are many businesses which trade in military surplus goods and equipment developed by military contractors, plaintiff does not direct the Court to any analogous case which has ever proceeded in United States District Court. However, many similar claims against the United States for compensation or the return of materials seized pursuant to section 793(d) have been brought before the Court of Federal Claims. See e.g. Dubin I, 289 F.2d at 652 (plaintiff sought compensation for the seizure of "transmitter-receiver radar equipment units" purportedly related to national defense) ; Dubin II (related to the former); Ast/Servo Sys., Inc. v. United States, 449 F.2d 789, 789 (Ct. Cl. 1971) (plaintiff sought compensation for "Guidance Sets of the Atlas Intercontinental Ballistic Missile"); Int'l Air Response v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
|---|---|---|---|
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

United States, 75 Fed. Cl. 604, 605 (2007) (plaintiff rebutted application of 18 U.S.C. 793(d)'s "national defense" provisions to Government's seizure of validly purchased surplus military transport planes). That plaintiff must pursue reimbursement through a Federal claims process does not render the seizure here a forfeiture.[4]

Other than the FTCA, plaintiff does not direct the Court to a statutory source of subject matter jurisdiction. Therefore, DaVinci's claim against the United States for conspiracy to commit abuse of process is appropriately **DISMISSED**.

**C.    Conversion**

Much the same reasoning applies to DaVinci's claim for conversion. DaVinci contends that its conversion claim sounds in tort and that, pursuant to the FTCA, the United States has consented to jurisdiction over a conversion claim against it in district court. However, Section 2680(c) bars jurisdiction over DaVinci's conversion claim.

The language of Section 2680(c) generally bars claims for conversion where, as here, the claim arises out of detention of property. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008) (Section 2680(c) maintains sovereign immunity for the "entire universe of claims against [any] law enforcement officers" arising out of the detention of property); Ford v. United States, 85 F. Supp. 3d 667, 671 (E.D.N.Y. 2015) (collecting cases in which Section 2680(c) precluded suit for common law conversion).[5]

---

[4] Although Section 793 has forfeiture provisions, see 18 U.S.C. 793(h), plaintiff does not contend that the JASSM antennas were seized pursuant to those provisions of the law.

[5] DaVinci argues that, in order for Section 2680(c)'s "detention exception" to apply, the United States would have had to only *briefly* possess the JASSM Antennas rather than indefinitely detain them.

As noted above, the definition of "detention" is broad. Furthermore, the Supreme Court has determined that the "detention exception" precludes suit, even where the property at issue was permanently lost. Kosak, 465 U.S. at 856; see also Parrott v. United States, 536 F.3d 629, 636 (7th Cir. 2008) ("a number of other circuits have held that even where the negligent actions of law enforcement officers lead to the complete

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

For the reasons already discussed, it appears that the seizure of the JASSM Antennas was not for purposes of forfeiture, but rather pursuant to Section 793(d) of the Espionage Act. Accordingly, the Court is without jurisdiction to consider DaVinci's conversion claim. Plaintiff's claim for conversion is hereby **DISMISSED**.

    **D.**  *Bivens* **Claims**

The FAC purports to allege two claims against "All Defendants" under Bivens. In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Court implied a federal cause of action against federal agents for unconstitutional conduct. In its opposition, plaintiff avers that the Court has jurisdiction under Bivens against the Individual Defendants. Opp'n at 9. Plaintiff dedicates two pages of its 15-page memorandum to jurisdiction over Bivens claims with respect to the individual defendants in their individual capacities. See Opp'n at 9-11. However, Bivens does not provide a cause of action against the United States as a party, F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994), and none of the individual defendants have joined in the United States's motion to dismiss.

Absent a waiver of sovereign immunity, the Court lacks jurisdiction over constitutional claims alleged against the United States. Meyer, 510 U.S. at 475. Plaintiff does not direct the Court to a source of jurisdiction over plaintiff's constitutional claims against the United States. Accordingly, plaintiff's constitutional claims against the United States are **DISMISSED**.

---

destruction of the property, § 2680(c) applies to bar the suit"). "[W]aivers of sovereign immunity must be construed strictly in favor of the sovereign." Foster, 522 F.3d at 1074.

Here, the Court has already discussed the national security purpose of the seizure here. Additionally, if the "detention" exception to the FTCA were limited to claims arising from *temporary* detention, it is unclear how a forfeiture exception to the detention exception would ever apply since forfeiture ordinarily connotes the permanent loss of property. Insofar as the JASSM Antennas were seized because they were classified and related to national security, that purpose is distinct from forfeiture and falls within the contours of Section 2680(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-05864-CAS (JCx) | Date | April 25, 2017 |
| Title | DAVINCI AIRCRAFT, INC. v. UNITED STATES OF AMERICA ET AL. | | |

## V.   CONCLUSION

Defendant's motion to dismiss is **GRANTED**.  Plaintiff's claims against the United States are **DISMISSED**.[6]

"If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4.  This action was filed on August 5, 2016.  Lewis appears to have been served on April 5, 2017, dkt 34, but has not yet responded or appeared in this matter.  The other individual defendants, Christmas and Russell, have not been served.  Plaintiff is **ordered to show cause**, no later than 14 days from the date of this order, why this action should not be dismissed without prejudice, as against Michael Christmas and Joel Russell.

IT IS SO ORDERED.

| | | 00 | 00 |
|---|---|---|---|
| | Initials of Preparer | CMJ | |

---

[6] In plaintiff's opposition, plaintiff requests that, if the Court determines that it lacks jurisdiction, the case be transferred to the Court of Federal Claims.  See Opp'n at 16 (citing 28 U.S.C. § 1631 (permitting transfer if it is in the interests of justice and could have been brought in another court)).  The Court concludes here that it lacks jurisdiction over plaintiff's claims against the United States.

However, the Court declines to assess whether jurisdiction may lie in the Court of Federal Claims over claims by plaintiff against the United States.  The parties have not fully briefed this issue and plaintiff maintains other claims here against the individual defendants.  Plaintiff does not explain how any such transfer would affect its remaining claims against the individual defendants and the Court of Federal Claims's jurisdiction over the individuals sued here.  Accordingly, plaintiff's request is **DENIED**.